**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

          **Plaintiff,**

          **v.**                                      **08-CR-69S(Sr)**

**QUENTIN LEEPER, et al,**

          **Defendants.**
_____

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. (Dkt. #60).

## PRELIMINARY STATEMENT

Defendants Quentin J. Leeper and Major Anthony Newton have each separately filed a motion to suppress the "electronic eavesdropping evidence" or "electronic surveillance" evidence on the grounds that there was a lack of probable cause and necessity for the issuance of the eavesdropping warrant. (Dkt. ##114 (Leeper) and 126 (Newton)). Defendants Ronquike Maisonet and Dion D. Knight each filed omnibus motions for discovery which will be the subject of a separate Decision and Order and in those motions, joined in the motions filed by any of their co-defendants. (Dkt. ##125 and 127). Finally, defendant Raymond Hodnett filed a Notice to Join Motion (Dkt. #123) specifically seeking to join in the motion filed by counsel for Quentin

J. Leeper (Dkt. #114). Thereafter, the government filed a consolidated response to all of the pending motions, including the omnibus motions for discovery. (Dkt. #132). Accordingly, what follows is this Court's Report, Recommendation and Order with respect to the motions and requests to join the motions filed under docket numbers, 114 (Quentin Leeper), 123 (Raymond Hodnett), 125 (Ronquike Maisonet), 126 (Major Anthony Newton) and 127 (Dion D. Knight). For the following reasons, it is recommended that defendants' motions to suppress the evidence obtained pursuant to the electronic eavesdropping warrant issued by New York State Supreme Court, Chautauqua County, Acting Supreme Court Judge John T. Ward be denied in their entirety.

## FACTS

Defendants Quentin J. Leeper, Ronquike E. Maisonet, Raymond A. Hodnett, Major Anthony Newton, and Dion D. Knight were charged along with six co-defendants in a multi-count superceding indictment with having violated Title 21, United States Code, Sections 841(a)(1), 846 and 853(a) and Title 18, United States Code, Section 2. (Dkt. ## 1 and 66). On January 30, 2008, New York State Supreme Court, Chautauqua County, Acting Supreme Court Justice John T. Ward issued a warrant pursuant to New York's Criminal Procedure Law Section 700.05 *et seq.*, authorizing the interception of telephonic and electronic communications (including text messaging) involving a telephone device bearing the number (716) 485-6360 used by Quentin J. Leeper, 49 W. 10th Street, Jamestown, New York and subscribed to by Glenda Garland,

49 W. 10th Street, Jamestown, New York based on the affidavit of Chautauqua County Sheriff's Department Lieutenant John W. Runkle sworn to on January 29, 2008.

**DISCUSSION AND ANALYSIS**

In support of their motions to suppress the evidence obtained pursuant to the electronic eavesdropping warrant, defendants argue that there was insufficient probable cause to support the issuance of the warrant and that there was no necessity for the warrant as "normal investigative techniques were succeeding." (Dkt. #114, pp.16-19; Dkt. #126, pp.17-19. The bare, conclusory statements that Lieutenant Runkle's affidavit lacked probable cause and necessity are insufficient, without more, to support suppression of the evidence obtained pursuant to the warrant.

      A.    **Probable Cause**

In support of his motion to suppress, defendant Leeper states, "[t]he affidavit does not set forth probable cause to believe that interception of telephone calls on he [sic] listed telephones [sic] will provide information about drug trafficking activities of the defendant or reveal information about one or more alleged drug conspiracies." (Dkt. #114, p.18). Moreover, defendant Newton's motion states, "[t]here was no probable cause to issue the eavesdropping warrants because the 3 confidential sources used in the application process were inherently unreliable and suspect with only CS2 implicating Newton." (Dkt. #126, p.19).

Basically, defendants are requesting that a review of Judge Ward's decision to issue the warrant be undertaken by this Court and that this Court conclude that such warrant was improperly issued. The role of this Court in conducting such a review is no different than that conducted by a court of appeals and therefore, the admonition of the Second Circuit Court of Appeals is appropriately applied in this process wherein the court stated**:**

> "In reviewing a ruling on a motion to suppress wiretap evidence, we accord deference to the district court." *Miller*, 116 F.3d at 663 (quoting *Torres*, 901 F.2d at 231). Our role in reviewing the issuance of a wiretap order is not to make a *de novo* determination of the sufficiency of the application, "but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *Id.*

*United States v. Diaz*, 176 F.3d 52, 109 (2d Cir.), *cert. denied, Rivera v. United States*, 528 U.S. 875 (1999).

In support of the application for the warrant, the Chautauqua County District Attorney submitted a fifty (50) page affidavit from Chautauqua County Sheriff's Department Lieutenant John W. Runkle. In his affidavit, Lieutenant Runkle described in detail a narcotics distribution enterprise operated by Quentin Leeper involving, *inter alia*, the financing and distribution of drugs. The factual allegations set forth in Lieutenant Runkle's affidavit were derived from his participation in the investigation, including surveillance of individuals and premises, as well as information provided to him by confidential sources, other federal law enforcement officers and members of the

Southern Tier Regional Drug Task Force. Lieutenant Runkle iterates specific details of drug activity undertaken by Leeper and others known and unknown to law enforcement. (*See* January 29, 2008 affidavit of Lieutenant John W. Runkle). An agent's training and experience can be considered in determining whether probable cause exists for the issuance of a warrant. *U.S. v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985).

As the Second Circuit Court of Appeals has stated, "the standard for probable cause applicable to [18 U.S.C.] § 2518 is 'the same as the standard for a regular search warrant.' *United States v. Fury*, 554 F.2d 522, 530 (2d Cir. 1977). Under *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. 2d 527 (1983), probable cause for a search warrant is established if the 'totality-of-the-circumstances' indicate a probability of criminal activity. *See id.* at 230-32, 103 S.Ct. 2317." *United States v. Diaz,* 176 F.3d at 110. Considering the totality of the circumstances set forth in the Affidavit of Lieutenant Runkle in support of the application for the January 30, 2008 warrant, the facts set forth in the application were adequate to support a finding of probable cause for the issuance of the warrant. *United States v. Diaz,* 176 F.3d at 109.

On December 18, 2007, over a month before the application for the warrant at issue here, an application was made by the Chautauqua County District Attorney for an order authorizing the use of a trap and trace device for telephone number (716) 485-6360. The application was granted and the device began receiving data on December 19, 2007. An analysis of the data received from the trap and trace

device revealed that there were 312 numbers either dialed to or received from telephone numbers known to be utilized by several of the defendants charged in the superceding indictment herein. Notably, defendant Newton was among those individuals identified. Although the other defendants who have "joined" in the instant motions were not specifically named as a "target" or "interceptee/violator" in the application at issue herein, the conversations that were intercepted revealed that they were participants in conversations with a named "target" or "interceptee/violator."

> [T]he failure to identify additional persons who are likely to be overheard engaging in incriminating conversations could hardly invalidate an otherwise lawful judicial authorization.

*United States v. Donovan*, 429 U.S. 413, 435 (1977); *United States v. Miller*, 116 F.3d 641, 644 (2d Cir. 1997).

Therefore, it is RECOMMENDED that defendant's motion to suppress the "electronic eavesdropping evidence" on the basis that there was "no probable" cause for the issuance of the eavesdrop warrant at issue be DENIED.

### B. Necessity

Defendants argue that the necessity for electronic eavesdropping and the interception of electronic communications was not sufficiently established prior to the application for the warrant and in fact, defendants further argue that traditional investigative techniques were succeeding. (Dkt. #114, ¶¶ 53-58; Dkt. #126, ¶¶ 64-65).

Additionally, defendants maintain that the statements relating to the necessity of the warrant are "conclusory and boilerplate in nature and are not in conformity with the facts of the case." Dkt. #126, ¶ 64. Lastly, defendants state, "the authorities simply turned to electronic surveillance as an expedient and cost effective method of monitoring a large number of individuals' telephonic communications with the hope of developing a case for prosecution rather than pursuing available methods of conventional police investigation which would have likely met with success if criminal activity existed." *Id*. at ¶ 65.

In his January 29, 2008 affidavit, Lieutenant Runkle enumerated multiple reasons why he believed that "normal investigative techniques will not result in the identification, indictment, or conviction of all the accomplices and co-conspirators in this drug distribution enterprise." (*See* Affidavit of Lieutenant Runkle). Notwithstanding the foregoing, Lieutenant Runkle does acknowledge in his affidavit that some traditional investigative techniques yielded valuable information, but that these efforts did not reveal the scope and extent of the drug trafficking operation. Lieutenant Runkle further iterated that the individual believed to be operating the enterprise, defendant Quentin Leeper, was well aware of the surveillance vehicles used, employed counter surveillance techniques and was aware of the police cameras placed in the area. Thus, according to Lieutenant Runkle, "intercepting or accessing those telephonic and electronic communications and conversations will enable investigating officers to be more efficient and unobtrusive in their attempts to initiate surveillance on the

participants and locations involved in this criminal enterprise." (Affidavit of Lieutenant Runkle, p.39).

As a threshold matter, the Court notes that Title 18, United States Code, Section 2518(1)(c), as with New York's Criminal Procedure Law 700.20(2), require that an application for electronic surveillance must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."

The application for the warrant was based upon a fifty (50) typewritten page affidavit of Lieutenant Runkle wherein he described in great detail the history of the investigation to date and information obtained based on use of confidential informants, physical surveillance and a trap and trace device. Lieutenant Runkle states that these normal avenues of investigation have been used with only limited results. He further states that the convening of a state grand jury, conducting interviews of subjects and the execution of search warrants at that time would not be likely to succeed and would undoubtedly alert the target subjects of the investigation. (Affidavit of Lieutenant Runkle, pp.40-47). Once again, the training and experience of the agent can be considered in this context of "necessity." *United States v. Fama,* 758 F.2d 834, 838 (2d Cir. 1985).

Since the holding in *United States v. Torres*, 901 F.2d 205 (2d Cir.), *cert. denied,* 498 U.S. 906 (1990), addresses the issue raised by the defendant on whether

18 U.S.C. § 2518(1)(c) was complied with, it is worthwhile to sacrifice brevity and set forth that Court's ruling in detail.

> Section 2518(1)(c) requires that an application for such an interception shall include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ." Similarly, section 2518(3)(c) requires the judge to whom an application for a wiretap is made to determine, as a condition of authorizing the tap, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ."
>
> The application for the wiretap in this case was based upon a thirty-six page affidavit by DEA agent Timothy J. Sullivan dated May 27, 1987. Flores contends that when the application for a wiretap was made, traditional law enforcement methods had already achieved "extraordinary success . . . in penetrating the deepest reaches of the Torres Organization," and that the "affidavit utterly failed to establish, even on a superficial level, that less intrusive techniques had not been successful and could not be successful." In advancing this position, Flores points out that our decision in *United States v. Lilla*, 699 F.2d 99 (2d Cir. 1983), precludes the authorization of wiretaps based upon "generalized and conclusory statements that other investigative procedures would prove unsuccessful," *id*. at 104. Flores also argues that it does not suffice to show that a case belongs to some general class of cases which require wiretap investigation, citing *United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir. 1975) (gambling case).
>
> We are unpersuaded, and conclude that the application in this case provided a sufficient basis for authorizing the Flores wiretap. Section 2518 "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974). As we have stated:
>
>> "[T]he purpose of the statutory requirements is not to preclude resort to electronic surveillance

> until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods."

*United States v. Vazquez*, 605 F.2d 1269, 1282 (2d Cir. 1979) (quoting *United States v. Hinton*, 543 F.2d 1002, 1011 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976)), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980); *see also United States v. Fury*, 554 F.2d 522, 530 (2d Cir), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977).

The role of an appeals court in reviewing the issuance of a wiretap order, furthermore, "is not to make a *de novo* determination of sufficiency as if it were a district judge, but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.) (collecting cases), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). And, as the *Scibelli* court went on to say:

> [I]n determining the sufficiency of the application a reviewing court must test it in a practical and common sense manner. The legislative history makes clear that section 2518(1)(c) is not designed to force the Government to have exhausted all "other investigative procedures".
>
> "The judgment [of the district judge] would involve a consideration of all the facts and circumstances. Normal investigative procedure would include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants. Merely

> because a normal investigative technique is
> theoretically possible, it does not follow that it
> is likely. What the provision envisions is that
> the showing be tested in a practical and
> commonsense fashion.
>
> S.Rep. No. 1097, 90th Cong., 2d Sess., 1968
> U.S.Code Cong. & Admin.News, p. 2190.
>
> *Scibelli*, 549 F.2d at 226 (citations omitted).

*Torres*, 901 F.2d at 231-232) (brackets included); see also Diaz, 176 F.2d at 111.


Although not expressly stated, the defendant is really arguing that the objectives of the investigation were attained prior to the issuance of the January 30, 2008 warrant, and therefore, there was no "necessity" for the warrant.

> Title 18 U.S.C. § 2518(5) provides in pertinent part:
>
> Every order and extension thereof shall contain a provision
> that the authorization to intercept . . . must terminate upon
> attainment of the authorized objective . . . .

In his affidavit, Lieutenant Runkle states:

> To the date of this application, the extent of this drug
> distribution enterprise is yet to be determined.... It [the
> issuance of the warrant] would also enable the investigators
> to determine what activities of Quentin Leeper or others,
> who are believed to be involved, are linked to the criminal
> enterprise, and what activities are lawful. It will also enable
> the identification of persons and/or locations as yet
> unknown, involved in the narcotics distribution enterprise,
> either as a supplier, transporter, purchaser, or storage
> location.

(Affidavit of Lieutenant Runkle, pp.39-40).

Giving proper deference to Judge Ward's review and acceptance of the fifty (50) page affidavit of Lieutenant Runkle sworn to on January 29, 2008 in support of the application for the warrant, it is concluded that Judge Ward properly found that conventional investigative techniques had been tried and failed and that alternatives to wire interception would be unlikely to succeed or would be too dangerous and that the objectives of the investigation had not been attained thereby necessitating the January 30, 2008 warrant.

Therefore, it is RECOMMENDED that defendant's motion to suppress the electronic evidence on the basis of "non-necessity" be DENIED.

## **CONCLUSION**

Based on the foregoing, it is hereby RECOMMENDED that defendant's motion to suppress all "electronic eavesdropping evidence" be DENIED in its entirety; and it is hereby

**ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report,**

**Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

        **SO ORDERED.**

DATED:     Buffalo, New York
               August 12, 2009

                                            **s/ H. Kenneth Schroeder, Jr.**
                                            **H. KENNETH SCHROEDER, JR.**
                                            **United States Magistrate Judge**